[No. 7367. Decided September 16, 1908.]

C. H. Squires *et al.*, *Respondents*, v. James Higginson,
*Respondent*, Thomas Bowes, *Appellant*.[1]

Cancellation of Instruments—Deeds—Fraud—Evidence — Sufficiency. A quitclaim is properly set aside for fraud, where it appears that the grantee represented to the nonresident owner, while on a visit to the city, that the lots were unimproved and of little value and that he had lost title through foreclosure and sale of taxes (which were long delinquent), and that the grantee was the tax title holder when in fact he was not interested therein, and knew that the lots were valuable and had been improved by parties in possession under void tax proceedings; that the owner had not seen the lots and relied upon such statements and was not acquainted with their value, and without seeing the lots or knowing of his rights, made the quitclaim of property worth $700, in consideration of $40, with intent to clear up the title of the holder of the tax deed.

Appeal from a judgment of the superior court for King county, Yakey, J., entered January 27, 1908, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*F. R. Conway*, for appellant.

*Todd, Wilson & Thorgrimson*, for respondent Higginson.

Mount, J.—The plaintiffs brought this action to quiet title to a certain lot in Ballard, in King county. They allege title in themselves through a delinquent tax foreclosure and sale. The intervener Bowes was allowed to intervene in the action, and he denied the alleged claim of title of the plaintiffs, and set up title in himself by reason of a quitclaim deed from the defendant Higginson. Higginson denied the alleged title in the plaintiffs and in the intervener Bowes, and alleged the invalidity of the tax sale under which the plaintiffs claimed, and alleged that the quitclaim deed executed by him to Bowes was acquired by fraud and deceit and was

[1]Reported in 97 Pac. 240.

therefore void. He alleged title to the lot in himself, and prayed that his title be quieted.

At the trial, which was had to the court without a jury, it was conceded that the tax foreclosure under which the plaintiffs claimed was void, and it was stipulated between the plaintiffs and the defendant Higginson that the plaintiffs had placed betterments upon the property after July, 1903, to the value of $1,400, and had paid taxes thereon amounting to $125. The court found that the intervener Bowes had acquired title from the defendant Higginson by fraud and deceit; and a judgment was entered to the effect that the defendant should have his title quieted against the plaintiffs upon the payment of $1,525 by defendant to plaintiffs for betterments and taxes, and that the quitclaim deed from defendant to the intervener be cancelled and set aside upon the return of $40 paid by the intervener to the defendant Higginson as a consideration for the deed, and that title to the lot be quieted in the defendant. The intervener Bowes only has appealed.

He alleges several errors, but the only one we need to consider is whether the court erred in finding that the quitclaim deed under which he claims was obtained by fraud and deceit. The facts are, in substance, these: The defendant Higginson acquired title to the property in the year 1891. The following year he left Seattle and went to Abbotsford, in British Columbia, where he has ever since resided. He permitted the taxes to become delinquent upon the lot. In the year 1901, one Newcomer purchased a certificate of delinquency against the lot, and proceeded to foreclose the same. The action was prosecuted to judgment and sale. The judgment and sale were void because the summons was insufficient to give the court jurisdiction.

In January, 1907, the plaintiffs brought this action to quiet title. The intervener, about that time, learned of this action and of the defects in plaintiffs' title, and of the value

of the property, which at that time was about $2,200. Bowes then wrote a letter to defendant Higginson at Abbotsford, in British Columbia, stating that Higginson had lost his title to the lot by reason of foreclosure proceedings for delinquent taxes, and made an offer of $25 for a quitclaim deed to clear up the title. Higginson then came to Seattle, and without looking at the lot, knowing its value, or knowing of the pendency of the action, saw Bowes, who told him that he had lost his title, that he (Bowes) was the owner of the tax title, that the property was unimproved and of very little value, and that, in order to avoid a lawsuit to clear up his title, he would give Higginson $35 for a quitclaim deed, $10 being for Higginson's railroad fare from British Columbia to Seattle.

Higginson had not seen the property for about sixteen years. He knew nothing of its value or the improvements thereon, and believed it had been sold for taxes because he had paid no taxes since about 1895. Being in ignorance of the facts, he believed and relied upon the statements made to him by Bowes, and executed a quitclaim deed to Bowes, the deed naming the consideration as $40, $5 having been paid for preparing the deed. Higginson testified that he did not intend to execute, and would not have executed, a deed to any one but the holder of the tax title, and did so for the purpose of clearing up the title in the hands of the purchaser at the tax sale. Upon receipt of the quitclaim deed from Higginson, Bowes filed his application, and was allowed to intervene in this action before Higginson knew of the suit.

It is claimed by the appellant that he and the defendant Higginson were dealing at arm's length, and that the latter therefore had no right to rely on his statements or representations. But we think the court was clearly right in setting aside the deed. Higginson was unacquainted with the lot, or its value, or the condition of the title. He believed he had lost the title through tax foreclosure proceedings, and that

Bowes was the holder of the tax title. It is true he might have learned the value of the lot and the fact that it had been improved by going and looking at it, and he might have examined the record and learned that the tax foreclosure was void. But he was not a lawyer; he was a farmer, and in all probability with an examination of the record he would have acquired no knowledge of the validity of the tax sale. Bowes knew all about it. He was engaged in purchasing tax titles. He knew of defendant's ignorance, and misrepresented all the facts to him; particularly he misrepresented that he was the holder of the tax title, on account of which defendant Higginson executed the deed. Bowes took advantage of his own knowledge and of defendant's ignorance and misrepresented the facts and thereby induced defendant to accept $40 for property at that time worth $700 without the improvements. We think it cannot be held under these circumstances that the parties here were dealing at arm's length or that Higginson might not rely upon appellant's representations. The appellant acquired the deed by deceit and fraud and for an inadequate consideration.

The judgment appears to be right, and is therefore affirmed.

HADLEY, C. J., CROW, and ROOT, JJ., concur.